# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO.: 5:03CV44

XAVIER LEE ZSARMANI,        )
                                 )
      **Plaintiff,**          )
                                 )
   **v.**                    )        __ORDER__
                                 )
IREDELL COUNTY, et al.,       )
                                 )
     **Defendants.**        )
_____)

     **THIS MATTER IS BEFORE THE COURT** on the "Motion for Summary Judgment" (Document No. 68), dated September 1, 2004, and corresponding "Defendant's Memorandum of Law in Support ..." (Document No. 67), dated August 31, 2004, both filed by Iredell County, the Iredell County Sheriff's Department, Sheriff Phillip Redmond, Deputy Sheriff Clarence Harris, Deputy Sheriff Jimmy Craven, Deputy Sheriff Darren Campbell, and Fidelity and Deposit Co. (collectively, "Defendants"); the "Plaintiff's Response to Defendant's Motion for Summary Judgment" (Document No. 72), filed December 1, 2004 by Xavier Zsarmani; and the "Defendant's Brief in Reply to Plaintiff's Response ..." (Document No. 73), filed December 10, 2004 by the Defendants. The parties have consented to magistrate jurisdiction under 28 U.S.C. § 636(c), and this matter is now ripe for disposition.

     Having carefully considered the arguments of the parties and the record, the undersigned will grant the "Motion for Summary Judgment" (Document No. 68).

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Mr. Zsarmani owns and operates Xavier's Barber Shop in Statesville, North Carolina. Xavier's Barber Shop has an almost exclusively black and Hispanic clientele. During the relevant period, Mr. Zsarmani employed Torrey Miller and Marlon Staton as barbers in his shop. Mr. Miller and Mr. Staton both had prior drug charges of which Mr. Zsarmani was unaware when he hired them.

On August 3, 2000, Judge Martin Gottholm of the General Court of Justice, District Court Division for the County of Iredell, North Carolina ("Iredell County District Court") issued a search warrant permitting officers to search Xavier's Barber Shop. Judge Gottholm issued the warrant based on an affidavit from Deputy Sheriff Clarence Harris, Jr. of the Iredell County Sheriff's Department. In the affidavit, Deputy Sheriff Harris testified that a confidential informant had previously made two controlled purchases of marijuana at Xavier's Barber Shop from one of the barbers. Deputy Sheriff Harris, who is a black male, was the lead officer in the investigation and search of Xavier's Barber Shop.

On August 4, 2000, Deputy Sheriff Harris, Deputy Sheriff Jimmy Craven, Deputy Sheriff Darren Campbell, other sheriff's deputies, and officers of the Statesville Police Department performed a search of Xavier's Barber Shop pursuant to the search warrant. Officers searched thoroughly inside and outside Xavier's Barber Shop and in cars parked behind the shop. During the search, Deputy Sheriff Harris shouted that the shop was "his house now"; that he would "do as he damned well pleased in his house"; and that "we know there are drugs in here," and "we're going

---

[1] The factual background is related in the light most favorable to Mr. Zsarmani, the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

to find them."

As part of the search, officers used two specially trained K-9 units. While searching inside the barber shop, the first K-9 unit did not discover any marijuana for the officers to seize. After approximately ninety minutes of searching, all of the occupants of the barber shop were moved to an area out of sight of the barber shop's bathroom. The second K-9 was then brought in to continue the search. Within seconds of entering the already-searched bathroom, the second K-9 alerted to the presence of marijuana. Detective Campbell, the officer in control of the second K-9, rewarded the dog by giving him a small canvas bag. Officers then seized a quantity of marijuana from an exposed area underneath the bathroom sink. The marijuana was found in a plastic bag wrapped in a terry cloth hand towel.

Following the search, officers arrested Mr. Zsarmani and charged him with misdemeanor possession of marijuana up to one-half ounce, misdemeanor possession of drug paraphernalia, and misdemeanor maintaining a place to keep a controlled substance. On October 2, 2000, Mr. Zsarmani was tried and found not guilty of possession of marijuana and possession of drug paraphernalia in Iredell County District Court. Mr. Zsarmani was, however, convicted of maintaining a place to keep a controlled substance. In February 2002, on de novo appeal, Mr Zsarmani was acquitted of the third charge in a jury trial in the General Court of Justice, Superior Court Division for the County of Iredell, North Carolina.

Following the incident, Mr. Zsarmani reported that he was concerned about people entering his shop; that he installed an alarm system; that he was unable to sleep; and that he felt like he was being followed and watched. In April 2000, Mr. Zsarmani received treatment from a psychologist with the Carolina Psych Group. Mr. Zsarmani saw the psychologist six times before a change in Mr.

Zsarmani's insurance caused Mr. Zsarmani to end the visits. The psychologist did not prescribe Mr. Zsarmani any medication or make a formal diagnosis. Instead, the psychologist gave Mr. Zsarmani a series of exercises to help Mr. Zsarmani overcome some of Mr. Zsarmani's fears. After the visits with the psychologist ended, Mr. Zsarmani met approximately three times with Revered J.C. Harris from the First Baptist Church in Statesville.

On April 4, 2004, Mr. Zsarmani filed a Complaint against Iredell County, the Iredell County Sheriff's Department, Sheriff Phillip Redmond, Deputy Sheriff Harris, Deputy Sheriff Craven, Deputy Sheriff Campbell, Deputy Sheriff Ronald Lambert, Deputy Sheriff Rodney Proctor, and fifteen John Does. Mr. Zsarmani alleged violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1988, as well as state claims for false arrest, malicious prosecution, slander, libel, and intentional infliction of emotional distress. On April 23, 2004, the Court entered summary judgment for Deputy Sheriffs Lambert and Proctor on all claims and granted the Defendants' motion to dismiss the slander and libel claims. On April 29, 2004, Mr. Zsarmani filed an Amended Complaint, which added Fidelity and Deposit Co. as a defendant and alleged violations by Deputy Sheriffs Harris, Craven, and Campbell in their individual and official capacities.[2] Mr. Zsarmani asks for relief in the form of compensatory and punitive damages.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be granted if the pleadings, responses to discovery, and affidavits, if any, establish that "there is no

---

[2] Mr. Zsarmani included Deputy Sheriffs Lambert and Proctor in the Amended Complaint despite the Court's Order entering summary judgment in their favor. To the extent that there is any confusion regarding the disposition of the case against Deputy Sheriffs Lambert and Proctor, the undersigned affirms that Deputy Sheriffs Lambert and Proctor are entitled to summary judgment on all claims.

genuine issue as to any material fact ...." Fed. R. Civ. P. 56(c). As this Court has previously explained,

> ... the moving party has the initial burden to show a lack of evidence to support [the non-moving party's] case. If this showing is made, the burden then shifts to the [non-moving party] who must convince the Court that a triable issue does exist.

Boggan v. Bellsouth Telecomm., Inc., 86 F.Supp.2d 545, 547 (W.D. N.C. 2000) (citations omitted).

A genuine issue of material fact exists if a reasonable jury could return a verdict for the non-moving party on the evidence presented. See Anderson, 477 U.S. at 252. The non-moving party opposing summary judgment cannot "rest upon ... mere allegation or denials ..., but ... must set forth specific facts showing that there is a genuine issue for trial." See id. at 248 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 319 U.S. 253, 288-89 (1968)). Importantly, in deciding a motion for summary judgment, the court views the evidence presented in the light most favorable to the non-moving party – that is, "[t]he evidence of the non-movant is ... believed, and all justifiable inferences are ... drawn in his favor." See Anderson, 477 U.S. at 255.

### III. DISCUSSION

In support of the motion for summary judgment, the Defendants make a number of contentions, all of which can be divided into two main categories. First, the Defendants contend that each defendant is entitled to summary judgment individually, because each defendant is either an improper party or is otherwise entitled to immunity. Specifically, the Defendants argue that Iredell County may not be held liable for the actions of the Sheriff; that the Iredell County Sheriff's Department may not be sued unless there is a statutory provision permitting such a suit; that Fidelity and Deposit Co. was not the Sheriff's surety for the relevant time period and therefore is not a proper party; that claims against Sheriff Redmond and Deputy Sheriffs Harris, Campbell, and Craven in

their official capacities are more accurately suits against the Iredell County Sheriff's Department; and that Deputy Sheriffs Harris, Campbell, and Craven are protected by public officer's immunity against claims in their individual capacities.

Next, the Defendants contend that – whether or not each defendant is either an improper party or otherwise entitled to summary judgment – Mr. Zsarmani has not raised a genuine issue of material fact, and the Defendants are entitled to summary judgment on all claims. Specifically, the Defendants argue that Mr. Zsarmani has failed to provide evidence to satisfy the elements of the alleged federal and state claims.

The undersigned will first address fully each of the Defendants' legal arguments with respect to the individual parties. Next, the undersigned will address, in turn, the factual arguments with respect to each of Mr. Zsarmani's claims.

### A. Individual Parties

#### a. Iredell County

A county may only be held liable for acts for which the county has "final policymaking authority." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). Whether a county has final policymaking authority is a question of state law. Id. Under North Carolina law, each elected sheriff "has the exclusive right to hire, discharge, and supervise the employees in his office." N.C. Gen. Stat. § 153A-103. This authority may not be delegated to another person or entity. N.C. Gen. Stat. § 162-24. As such, "the sheriff, not the county, has the final policymaking authority over the personnel decisions in his office." Little v. Smith, 114 F.Supp.2d 437, 446 (W.D. N.C. 2000) (citing Clark v. Burke County, 450 S.E.2d 747, 749 (N.C. Ct. App. 1994)).

The Defendants argue that Iredell County is not a proper party to this suit and that summary

judgment should be awarded in its favor. Mr. Zsarmani contends, to the contrary, that Iredell County has waived its governmental immunity and thus is a proper party. Specifically, Mr. Zsarmani argues that – by purchasing liability insurance which includes law enforcement under its coverage – Iredell County is no longer entitled to governmental immunity. In support of this contention, Mr. Zsarmani cites Houpe v. City of Statesville, 497 S.E.2d 82, 87 (N.C. Ct. App. 1998) ("A municipality may waive governmental immunity for tort actions by the purchase of liability insurance.").

The undersigned finds, however, that Mr. Zsarmani's reliance on Houpe is misplaced. The issue here is not whether the county is entitled to governmental immunity, but rather the issue is whether Iredell County may be held liable for the Sheriff's actions. Under North Carolina law, it is clear that – because the county does not have the final policymaking authority – it may not be held liable for the actions of the sheriff. See Little, 114 F.Supp.2d at 446. Accordingly, the undersigned concludes that Iredell County is not a proper party and thus is entitled to summary judgment on all claims.

### b. Iredell County Sheriff's Department

The Defendants contend that the Iredell County Sheriff's Department is entitled to summary judgment on all claims because it, too, is not a proper party to the suit. Specifically, the Defendants argue that one cannot sue the sheriff's department absent a statutory provision. In response, Mr. Zsarmani states only that he "no longer considers the Iredell County Sheriff's Department to be a defendant in this action" and that the Iredell County Sheriff's Department was included in the Amended Complaint by error. As such, Mr. Zsarmani tacitly agrees that summary judgment is appropriate with respect to the Iredell County Sheriff's Department. Because the parties do not dispute that the Iredell County Sheriff's Department should no longer be a party to this suit, the

undersigned grants summary judgment on all claims with respect to this defendant.

### c. Fidelity and Deposit Co.

In order to bring a claim "against a governmental entity and its employees acting in their official capacities," a plaintiff must prove "that the officials have waived their sovereign immunity or otherwise consented to suit." Efird v. Riley, 342 F.Supp.2d 413, 425 (M.D. N.C. 2004) (citing Sellers v. Rodriguez, 561 S.E.2d 336, 339 (N.C. Ct. App. 2002)). In North Carolina, a sheriff waives his immunity by purchasing a sheriff's bond. See id.

North Carolina law provides as follows:

> Every person injured by the neglect, misconduct, or misbehavior in office of any ... sheriff ... may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office ....

N.C. Gen. Stat. § 58-76-5. In order to recover on a sheriff's bond, however, the bond surety must be joined as a party to any action against the sheriff. Efird, 342 F.Supp.2d at 425.

In the motion for summary judgment, the Defendants contend that Fidelity and Deposit Co. – the Iredell County Sheriff's current surety – is entitled to summary judgment on all claims. Specifically, the Defendants argue that Fidelity and Deposit Co. was not the Sheriff's surety at the time the events at Xavier's Barber Shop took place and, therefore, cannot be held liable for any misconduct by the Iredell County Sheriff's Department during that period. Mr. Zsarmani does not dispute that Fidelity and Deposit Co. was not the Sheriff's surety during the relevant period. Instead, Mr. Zsarmani argues that Mr. Zsarmani's attorney "has made a good faith effort to determine the identity of the surety and has been unsuccessful" and that "it would be unfair and cause substantial prejudice to Plaintiff to allow summary judgment on this issue at this premature time."

Despite Mr. Zsarmani's argument to the contrary, it is clear that Fidelity and Deposit Co. cannot be held liable for the Sheriff's conduct during a period in which it was not the Sheriff's surety. To hold otherwise would unfairly prejudice Fidelity and Deposit Co. Accordingly, the undersigned grants summary judgment for Fidelity and Deposit Co. on all claims.[3]

### d. Sheriff Redmond and Deputy Sheriffs Harris, Campbell, and Craven

### 1. Official Capacity Claims

### i. With Respect to all Federal Claims – 42 U.S.C. §§ 1981, 1983, 1985, and 1988

In Kentucky v. Graham, 473 U.S. 159, the Supreme Court held that suits against officers in their official capacities "represent only another way of pleading an action against an entity of which an officer is an agent." Id. at 165. As such, a suit against an officer in her official capacity is treated the same as a suit against the entity itself, as long as the government entity receives notice and an opportunity to respond. See id. at 166.

In order to be held liable in a federal action against an officer in her official capacity, the government entity must be a "moving force" behind the violation. Id. In other words, the entity's policy or custom must have played a part in the violation of federal law. See id.

In the Amended Complaint, Mr. Zsarmani alleges federal claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1988 against the Sheriff and Deputy Sheriffs. Applying Kentucky v. Graham, these claims, however, are more accurately described as claims against the Iredell County Sheriff's Department. As such, in order to support these claims, Mr. Zsarmani must provide evidence that the

---

[3] Even if Mr. Zsarmani had joined the proper surety as a defendant, the Defendants would still be entitled to summary judgment because – for the reasons stated below – Mr. Zsarmani has failed to produce evidence upon which a reasonable jury could find in his favor on each of the claims. See infra III.B.

alleged violations represent the policy or custom of the Iredell County Sheriff's Department. In his brief, Mr. Zsarmani argues only that the Amended Complaint and Mr. Zsarmani's deposition "clearly allege a policy, practice or custom of the Defendants that resulted in the constitutional violations alleged." In response to a motion for summary judgment, however, the plaintiff may not rely on mere allegations. Instead one must offer specific facts either by affidavit or other evidence in support of the allegations. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Because Mr. Zsarmani has cited no particular policy or custom of the Iredell County Sheriff's Department and has not offered any specific facts in support of his allegation, the Sheriff and Deputy Sheriffs are entitled to summary judgment on all federal claims brought against them in their official capacities.

### ii. With Respect to all State Claims – False Arrest, Malicious Prosecution, and Intentional Infliction of Emotional Distress

The principle of sovereign immunity provides that public officials – acting in their official capacity – have an absolute, unqualified immunity from tort liability. Phillips v. Gray, 592 S.E.2d 229, 232 (N.C. Ct. App. 2004). Courts have determined that North Carolina sheriffs are considered public officials for the purposes of sovereign immunity. Id. (citation omitted). Accordingly, unless there is a statutory provision providing otherwise, sheriffs are shielded from liability for state common law claims when discharging their official duties. Efird v. Riley, 342 F.Supp.2d 413, 425 (M.D. N.C. 2004).

Under North Carolina law, however, the county may waive sovereign immunity for a sheriff by purchasing liability insurance. Id. North Carolina General Statute § 153A-435 provides that the "purchase of insurance pursuant to this subsection waives the county's governmental immunity, to

the extent of insurance coverage." Accordingly, the sheriff retains immunity for those official actions not covered by the county's insurance policy. Phillips, 592 S.E.2d at 232.

In response to the motion for summary judgment on the state clams – false arrest, malicious prosecution, and intentional infliction of emotion distress – Mr. Zsarmani argues that the county has waived immunity for the Iredell County Sheriff's Department by purchasing liability insurance which covers law enforcement. The Defendants contend, to the contrary, that Iredell County's policy exempts the conduct of which Deputy Sheriffs Harris, Campbell, and Craven are accused.

After carefully reviewing the insurance policy, the undersigned finds that Iredell County's liability insurance provides an exception for "the willful, intentional, or malicious conduct of any Covered Person." As such, the Iredell County Sheriff's Department retains sovereign immunity for this conduct. Mr. Zsarmani's claims of false arrest, malicious prosecution, and intentional infliction of emotional distress include elements of intent excluded by the insurance policy. Because the insurance policy provides exemptions for the conduct of which the Deputy Sheriffs are accused, the Deputy Sheriffs retain sovereign immunity for their actions in their official capacity with respect to these claims and are thus entitled to summary judgment.

### 2. Individual Capacity Claims

#### i. With Respect to all Federal Claims – 42 U.S.C. §§ 1981, 1983, 1985, and 1988

The doctrine of qualified immunity shields government officials from civil damages as long as the officials are performing discretionary functions and are not violating clearly established statutory or constitutional rights of which a reasonable person would have been aware. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects officials from having to stand

trial or face the other burdens of litigation.  Brown v. Gilmore, 278 F.3d 362, 366-67 (4th Cir. 2002).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court explained that, when determining qualified immunity for an officer's conduct, courts must perform a sequential evaluation.  Id. at 201.  First, the court must determine whether if "taken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right."  Id.  Second, if the court finds a violation based on this initial inquiry, the court must determine "whether the right was clearly established .... in light of the specific context of the case."  Id.  A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.

In the Amended Complaint, Mr. Zsarmani alleges that the Deputy Sheriffs violated his constitutional rights as secured by the Fourth and Fourteenth Amendments.  Specifically, Mr. Zsarmani alleges that the Deputy Sheriffs (1) used excessive force, (2) searched Mr. Zsarmani's place of business without probable cause, (3) planted drugs, and (4) denied Mr. Zsarmani due process of law.  Applying the sequential test for qualified immunity, the undersigned will evaluate each of the alleged constitutional violations in turn, viewing the facts in the light most favorable to Mr. Zsarmani.

First, there are no facts in the record to support Mr. Zsarmani's excessive force allegation. In his deposition, Mr. Zsarmani admitted that during the search the officers did not physically assault anyone on the premises.  Accordingly, the undersigned concludes that the facts alleged show that the Defendants' conduct did not violate Mr. Zsarmani's constitutional rights through the use of excessive force.

Second, with respect to the unreasonable search claim, Mr. Zsarmani argues that Deputy Sheriff Harris lied to Judge Gottholm about having a confidential informant and therefore obtained the search warrant by fraud. Mr. Zsarmani states that he has evidence "showing that there was no such confidential informant." Deputy Sheriff Harris swears, however, in an affidavit submitted with the Defendants' motion for summary judgment that he did not lie to obtain the search warrant, and that he monitored a confidential informant while the informant made two different controlled purchases from Xavier's Barber Shop. Mr. Zsarmani, on the other hand, has provided no affidavits or any other evidence to support his allegations regarding Deputy Sheriff Harris's alleged misconduct.

At the summary judgment stage, the non-moving party cannot "rest upon ... mere allegation ..., but must set forth specific facts showing that there is a genuine issue for trial." See Anderson, 477 U.S. at 252. Mr. Zsarmani has failed to provide any such facts. As such, the evidence in the record reflects that the Iredell County Sheriff's Department searched Xavier's Barber Shop pursuant to a valid search warrant issued by Judge Gottholm; that a confidential informant made two controlled purchases from a barber in the shop prior to the search; and that Mr. Miller and Mr. Staton – barbers employed by Mr. Zsarmani – both had prior drug convictions. Accordingly, the undersigned concludes that the facts alleged show that the Defendants' conduct did not violate Mr. Zsarmani's constitutional right to be free from unreasonable search and seizure.

Third, the crux of Mr. Zsarmani's constitutional violation claim is that the Deputy Sheriffs planted drugs in the bathroom of Xavier's Barber Shop. The facts, viewed in the light most favorable to Mr. Zsarmani, indicate that officers thoroughly searched the barber shop for approximately ninety minutes before any drugs were located; that the first K-9 unit did not alert to

any drugs in the bathroom; that everyone was ordered to an area within the barbershop out of view of the bathroom; that the second K-9 unit alerted to the presence of drugs within seconds of entering the bathroom; and that after the drugs were located, Deputy Sheriff Harris said, "I knew we'd find it." Mr. Zsarmani argues that – based on these facts – one can infer that the officers must have planted the drugs in the bathroom. Deputy Sheriffs Harris, Campbell, and Craven all submitted affidavits swearing that no officer engaged in any misconduct in the search of Xavier's Barber Shop. In response, Mr. Zsarmani has provided no affidavits or any other evidence. Furthermore, in his deposition, Mr. Zsarmani admits that he has no idea how the marijuana got in the bathroom. Indeed, Mr. Zsarmani provides no evidentiary support beyond his mere speculation that the drugs were planted. After carefully reviewing the record, the undersigned concludes that no reasonable jury could conclude that – viewing the facts in the light most favorable to Mr. Zsarmani – the Deputy Sheriffs planted drugs in Xavier's Barber Shop. Accordingly, the undersigned finds no constitutional violation.

Finally, Mr. Zsarmani's claim that he was denied due process of law lacks support for many of the reasons stated above. The record indicates that officers performed the search pursuant to a valid search warrant, and that the officers did not engage in misconduct while carrying out the search. Accordingly, the undersigned concludes that the facts alleged show that the Defendants' conduct did not violate Mr. Zsarmani's constitutional right to due process of law.

In summary, after thoroughly reviewing the record and viewing the facts in the light most favorable to Mr. Zsarmani, the undersigned finds no constitutional violations. As such, the inquiry into the officers' qualified immunity ends. See Layman v. Alexander, 294 F.Supp.2d 784, 792 (W.D. N.C. 2003). Based on the foregoing, the undersigned concludes that Deputy Sheriffs Harris,

Campbell, and Craven retain their qualified immunity from all of Mr. Zsarmani's federal claims and are therefore entitled to summary judgment on those claims.

### ii. With respect to all State Claims – False Arrest, Malicious Prosecution, and Intentional Infliction of Emotional Distress

Under North Carolina law, "a public official is immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." Slade v. Vernon, 429 S.E.2d 744, 747 (N.C. Ct. App. 1993). As such, a plaintiff must allege and prove corruption or malice in order to hold a public official individually liable for state common law claims. See Schlossberg v. Goins, 540 S.E.2d 49, 56 (2000). When the official is performing governmental duties involving the exercise of discretion, allegations of negligence or reckless indifference are insufficient. Id.

In the Amended Complaint, Mr. Zsarmani alleges that Deputy Sheriffs lied to obtain a search warrant and planted drugs in Xavier's Barber Shop – conduct that is clearly corrupt and malicious. As detailed above, however, Mr. Zsarmani's allegations are unsupported by any evidence in the record. See supra III.A.d.2.i. As such, Mr. Zsarmani has failed to satisfy his burden to allege and provide factual support for corruption or malice in the conduct of the Deputy Sheriffs. Accordingly, the undersigned concludes that Deputy Sheriffs Harris, Campbell, and Craven retain their public officers' immunity against personal liability and are entitled to summary judgment on all state common law claims.

### B. Individual Claims

Although the undersigned concludes that the Defendants are entitled to summary judgment based on the legal arguments with respect to each individual defendant, the undersigned will address – in the alternative – the factual arguments with respect to each of Mr. Zsarmani's federal and state claims.

### a. 42 U.S.C. § 1981

Section 1981 provides in relevant part:

> All persons ... shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981(a). To survive a motion for summary judgment on a Section 1981 claim, the plaintiff must provide sufficient evidence for a reasonable jury to return a verdict in his favor on the following elements:

> (1) she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute.

Jackson v. Blue Dolphin Communications of N.C., LLC, 226 F.Supp.2d 785, 789 (W.D. N.C. 2002).

Applying the elements of Section 1981, there is no dispute that Mr. Zsarmani is a member of a racial minority and therefore, satisfies the first element. With respect to the second element, there is no evidence to support Mr. Zsarmani's allegation that the Defendants had an intent to discriminate on the basis of Mr. Zsarmani's race. As Mr. Zsarmani stated in his deposition, no one made any racial comments during the search of Xavier's Barber Shop. Furthermore, when asked if he thought the raid was racially motivated, Mr. Zsarmani responded, "No, not race alone." The

Defendants have provided affidavits from officers involved in the search who swear that race was not a motivating factor, including an affidavit from Deputy Sheriff Harris – the officer in charge who is a black male. In response, Mr. Zsarmani has provided no affidavits or any other evidence in support of his allegation of an intent to discriminate. See Lujan, 504 U.S. at 561 ("In response to a summary judgment motion, ... the plaintiff can no longer rest on such mere allegations, but must set forth ... specific facts ...."). Because Mr. Zsarmani has provided no evidence to satisfy the second element of a Section 1981 claim, the undersigned concludes that the Defendants are entitled to summary judgment on that claim.

### b. 42 U.S.C. § 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983. To prevail on a Section 1983 claim, a plaintiff must satisfy the following elements:

> (1) that she has been deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under the color of state law.

Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998).

In support of his Section 1983 claim, Mr. Zsarmani alleges violations of his Fourth and Fourteenth Amendment rights. Specifically, Mr. Zsarmani contends that the Defendants used

excessive force and denied Mr. Zsarmani's right to due process of law. Mr. Zsarmani, however, provides no affidavits or evidence to support these naked allegations. Accordingly, the undersigned, as discussed in detail above, concludes that the Defendants have not violated any of Mr. Zsarmani's constitutional rights. See supra III.A.d.2.i. Accordingly, the Defendants are entitled to summary judgment on Mr. Zsarmani's Section 1983 claim.

### c. 42 U.S.C. § 1985

The elements of a prima facie case under Section 1985 are as follows:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983); accord Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995).

In support of his Section 1985, Mr. Zsarmani alleges that Sheriff Redmond and the Deputy Sheriffs conspired against Mr. Zsarmani by planning an unlawful raid of his barber shop and then by planting drugs in the shop when they were unable to locate any drugs after a ninety minute search. Mr. Zsarmani, however, provides no affidavits or evidentiary support for this allegation. In Simmons v. Poe, the Fourth Circuit stated, "We have specifically rejected Section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." Simmons, 47 F.3d at 1377. After thoroughly reviewing the record, the undersigned concludes that Mr. Zsarmani's alleged conspiracy lacks factual support and is merely alleged in a conclusory manner. Accordingly, the Defendants are entitled to summary judgment on

Mr. Zsarmani's Section 1985 claim.

### d. 42 U.S.C. § 1988

Section 1988 discusses the applicability of statutory and common law and the awarding of attorney's fees and expert fees in federal cases – including Section 1981, 1983, and 1985 claims. Because the undersigned concludes that the Defendants are entitled to summary judgment on these federal claims, the Defendants are necessarily entitled to summary judgment on the Section 1988 claim, which is merely pled in conjunction with the other federal claims.

### e. False Arrest

According to North Carolina law, "false arrest is an arrest without legal authority and is one means of committing false imprisonment." Marlowe v. Piner, 458 S.E.2d 220, 223 (N.C. Ct. App. 1995). In order to validly arrest a person without a warrant, an officer must have probable cause. Id. Accordingly, the primary issue under a false arrest claim is whether the arresting officer had the requisite probable cause. Id.

Mr. Zsarmani's false arrest claim is based upon his allegations that Deputy Sheriff Harris lied in an affidavit to obtain a search warrant and that officers planted the drugs in Xavier's Barber Shop. As discussed above, the undersigned concludes that – even when the facts are viewed in the light most favorable to Mr. Zsarmani – one cannot reasonably draw these inferences based on the facts in the record. See supra III.A.d.2.i. The facts indicate that officers searched Mr. Zsarmani's shop pursuant to a valid search warrant and found drugs in the bathroom after a ninety minute search. After locating the drugs, the officers had probable cause to arrest Mr Zsarmani. Accordingly, the undersigned concludes that the Defendants are entitled to summary judgment on Mr. Zsarmani's false arrest claim.

**f. Malicious Prosecution**

Under North Carolina common law, the elements of malicious prosecution are as follows:

> (1) defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff.

Best v. Duke Univ., 448 S.E.2d 506, 510 (N.C. 1994). Courts in North Carolina have consistently held that – unless the conviction was procured by fraud or other unfair means – a conviction in district court is conclusive evidence of probable cause, even if the conviction is later overturned on appeal. Priddy v. Cook's United Dep't Store, 194 S.E.2d 58 (N.C. Ct. App. 1974).

Applying the elements of malicious prosecution, neither side disputes that the first element was satisfied when the Defendants initiated the suit against Mr. Zsarmani by arresting and charging him following the search of Xavier's Barber Shop. There is also no dispute with respect to the fourth element of the claim, because the proceeding was terminated in Mr. Zsarmani's favor with an acquittal in Superior Court. The contested elements then are the second and third elements – malice and probable cause.

With respect to the second element, an officer acts maliciously when he "commit[s] an act which a man of reasonable intelligence would know to be contrary to his duty." Lea v. Kirby, 171 F.Supp.2d 579, 584 (M.D. N.C. 2001) (citation omitted). The undersigned has concluded that no reasonable jury could infer – even when the facts are viewed in the light most favorable to Mr. Zsarmani – that Deputy Sheriff Harris lied in his affidavit to procure a search warrant and that the officers planted the drugs. See supra III.A.d.2.i. Accordingly, there is no evidence in the record that the officers acted maliciously.

With respect to the third element, the undersigned, as detailed above, has concluded that the

officers had probable cause in arresting Mr. Zsarmani. See supra III.B.e. As such, the Defendants had probable cause by extension to initiate the proceeding against Mr. Zsarmani. Furthermore, under North Carolina law, Mr. Zsarmani's conviction in Iredell County District Court is conclusive evidence of probable cause. In his response to the motion for summary judgement, Mr. Zsarmani contends that the conviction in District Court was procured by fraud. This assertion, however, is based on the same allegations of lying and planting drugs that the undersigned has concluded are not reasonable inferences based on the facts. Accordingly, because Mr. Zsarmani has failed to produce evidence that the Defendants lacked probable cause or that they acted maliciously, the Defendants are entitled to summary judgment on the malicious prosecution claim.

### g. Intentional Infliction of Emotional Distress

The Middle District of North Carolina recently summarized North Carolina law on the tort of intentional infliction of emotional distress as follows:

> In North Carolina, the tort of intentional infliction of emotional distress consists of: (1) extreme outrageous conduct, (2) which is intended to cause and does cause, (3) severe emotional distress to another. The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress. To satisfy the first element's requirement that the defendant's conduct was extreme and outrageous, the plaintiff must show that the conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The determination of whether the conduct alleged was intentional and was extreme and outrageous enough to support such an action is a question of law for the trial judge.

Sabrowski v. Albani-Bayeux, Inc., 2003 WL 23018827, *3-4 (M.D. N.C. 2003) (internal marks and citations omitted).

In the Amended Complaint, Mr. Zsarmani alleges conduct that is extreme and outrageous. Specifically, Mr. Zsarmani argues that Deputy Sheriffs lied to obtain a search warrant and planted

drugs in his barber shop. As detailed above, the undersigned finds that the facts do not support Mr. Zsarmani's conclusory allegations. See supra III.A.d.2.i. Accordingly, Mr. Zsarmani has failed to satisfy the first two elements of an intentional infliction of emotional distress claim, and the Defendants are entitled to summary judgment on that claim.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** the "Motion for Summary Judgment" (Document No. 68) is granted.

**Signed: September 13, 2005**

David C. Keesler
United States Magistrate Judge